**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RHONDA F. JONES,** | **CASE NO. 1:20-CV-00356** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **OHIO NATIONAL LIFE INSURANCE COMPANY, et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | |

Currently pending is the Motion to Dismiss under Rule 12(b)(6) or, in the alternative, Transfer Venue filed by Defendants Ohio National Life Insurance Company and Ohio National Life Assurance Corporation (collectively, "Defendants" or "Ohio National"). (Doc. No. 9.) Plaintiff Rhonda F. Jones ("Jones") filed a brief in opposition on April 22, 2020, to which Defendants replied on May 5, 2020. (Doc. Nos. 10, 11.) For the following reasons, Defendants' Motion to Transfer Venue is GRANTED. The Court declines to consider the merits of Defendants' Motion to Dismiss under Rule 12(b)(6).

**I. Background**

    **a. Factual Background**

Jones claims that Defendants violated federal securities law and the Ohio Consumer Sales Practices Act, acted negligently, and were unjustly enriched when they failed to investigate the suitability of an expensive "key man" insurance policy they issued to Jones in 2016. (Doc. No. 1.)

Jones is a resident of Charlotte, North Carolina. (*Id.* at ¶ 12.)[1] Jones worked part-time as a bookkeeper for her husband's business, Jax Enterprises LLC. (*Id.* at ¶ 15.) She earned $54,000 in W-2 income annually. (*Id.*) Defendants are both wholly owned stock subsidiaries of Ohio National Financial Services. (*Id.* at ¶ 13.) Both companies have their principal places of business in Cincinnati, Ohio. (*Id.*)

In 2016, Jones approached James T. Flynn, a broker-dealer with whom she already maintained brokerage accounts,[2] regarding long-term investments. (*Id.* at ¶¶ 15, 16.) One such investment that Jones inquired about was a variable life insurance policy. (*Id.*) According to Jones, Flynn had knowledge of Jones's financial history, assets, and tolerance for financial risk because she had invested with him before. (*Id.*) Jones states that she was unaware that Flynn was in dire financial straits at the time. (*Id.* at ¶ 18.) According to the Financial Industry Regulatory Authority's BrokerCheck record on Flynn, he was subject to more than $280,000 in judgments and liens since 2005 and had filed for bankruptcy in 2013, claiming more than $3.5 million in debts. (*Id.* at ¶¶ 19, 20.)

Nevertheless, on Flynn's advice, Jones applied for a $5 million variable life insurance policy on August 16, 2016, to be issued by Ohio National Life Insurance Company. (*Id.* at ¶ 24.) Flynn told Jones that this policy was a "solid investment for her, and that the premiums on this policy would be tax-deductible." (*Id.* at ¶ 23.) However, Jones's $200,000 annual premiums were not tax-deductible as Flynn claimed. (*Id.* at ¶ 27.)

---

[1] The allegations contained in Jones's Complaint are assumed to be true solely for purposes of ruling on Defendants' Motion.
[2] Flynn was affiliated with broker-dealer Voya Financial Advisors from May 2013 through February 2017 and then with IFS Securities from February 2017 through February 2018. (Doc. No. 1 at ¶ 15.)

On November 21, 2016, a representative of Flynn emailed Jones to "assure her that Flynn had 'spoken to several representatives at Ohio National, and everyone, including the president of the company, has made this a top priority.'" (*Id.* at ¶ 25.) On December 2, 2016, the policy amount was increased to $6 million on Flynn's advice. (*Id.* at ¶ 24.)

According to Jones, she did not understand that Flynn had not sold her a typical variable life insurance policy, but a "key man" policy. (*Id.* at ¶ 26.) "Key man" policies are typically sold to companies to insure the lives of key business executives. (*Id.*) Generally, companies pay the premiums on "key man" policies and are also the beneficiaries if the insured executive dies. (*Id.*) Jones also asserts that Flynn misrepresented her income and assets on the application to ensure that Jones's application was approved. (*Id.* at ¶ 29.) She further asserts that there were additional "red flags" that should have put a "reasonable issuer" on notice that the key man policy was unsuitable for Jones. (*Id.* at ¶¶ 30, 31.) Jones alleges Defendants failed to investigate or conduct any such suitability analysis before they issued Jones's policy. (*Id.*) According to Jones, had Defendants investigated, they would have realized that Jones was not a "key man" to Jax Enterprises, that Flynn falsely inflated Jones's income and assets, that Jones's $54,000 annual income was insufficient to pay for the $200,000 annual premiums, and that Flynn was in financial distress and therefore incentivized to sell unsuitable securities to his clients. (*Id.* at ¶ 31.)

### b. Procedural History

On February 18, 2020, Jones filed a Complaint against Defendants, asserting four claims: (1) Defendants violated SEC Rule 10b-5; (2) Defendants violated the Ohio Consumer Sales Practices Act; (3) negligence; and (4) unjust enrichment. (Doc. No. 1 at ¶¶ 46, 50, 51, 58, 60, 66.)

On April 2, 2020, Defendants moved to dismiss Jones's claims under Fed. R. Civ. P. 12(b)(6), or in the alternative, transfer the case to the Southern District of Ohio, pursuant to 28 U.S.C. § 1404(a). (Doc. No. 9 at PageID# 44.) In their brief, Defendants make several arguments as to why Jones's Complaint should be dismissed, or alternatively, why this case should be transferred to the Southern District of Ohio. (Doc. No. 9-1 at PageID# 46.) Defendants argue that Jones's four claims are based on the assertion that they had a duty to determine whether the policy was suitable for Jones. (*Id.* at PageID# 48.) According to Defendants, this duty is "the exclusive domain of the registered representative and the broker-dealer," or in this case, Flynn and Voya Financial Advisors. (*Id.*) Any responsibility for determining a policy's suitability rests with Flynn and Voya Financial, not Defendants. (*Id.*) Jones filed a brief in opposition to Defendants' Motions on April 22, 2020. (Doc. No. 10.) Jones opposes the dismissal of her Complaint, as well as the transfer of this action. (*Id.* at PageID# 68-69.) Jones also asserts that, should this Court dismiss her Complaint, the Court should do so without prejudice to allow Jones to more precisely replead her Complaint. (*Id.* at PageID# 84.) On May 5, 2020, Defendants filed a reply. (Doc. No. 11.)

If the Court finds that venue is more appropriate in the Southern District of Ohio, the Court need not consider the merits of Defendants' Motion to Dismiss under Rule 12(b)(6). *See, e.g., Meadors v. Cont'l Structural Plastics, Inc.*, No. 1:12–cv–1607, 2013 WL 11330933, at *2 (N.D. Ohio Mar. 8, 2013); *Ohio Learning Centers, LLC v. Sylvan Learning, Inc.*, No. 1:10–cv–1062, 2010 WL 2803042, at *1 (N.D. Ohio July 14, 2010); *Audi AG v. Shokan Coachworks Inc.*, No. 04–70626, 2007 WL 522707, at *5 (E.D. Mich. Feb. 13, 2007). Therefore, the Court initially addresses Defendants' Motion to Transfer Venue under 28 U.S.C. §1404(a).

4

**II. Motion to Transfer**

    **a. Standard of Review**

28 U.S.C. § 1404(a) permits district courts to transfer civil actions to any other district where the actions may have been brought for the convenience of the parties or witnesses. *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 572 (N.D. Ohio Dec. 7, 1998).

When considering a motion brought under 28 U.S.C. § 1404(a), a district court evaluates factors related to "the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "Factors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* Additionally, "[t]he Court must also give some weight to the plaintiffs' choice of forum." *Id.* (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, (1955)). However, "when the chosen forum is not the plaintiff's residence, this choice is given less consideration." *Cescato v. Anthem, Inc.*, No. 1:05–cv–2004, 2005 WL 3487974, at *2 (N.D. Ohio Dec. 21, 2005) (citing *Piper*, 454 U.S. at 242; *Travelers Casualty and Surety Co. v. Philadelphia Reinsurance Corp.*, No. 301–cv–7058, 2001 WL 631328, at *4 (N.D. Ohio May 10, 2001)). The party requesting the transfer "bears the burden of proof to show the factors weigh 'strongly' in favor

of transfer." *Goodrich Corp. v. Winterthur Int'l Am. Ins. Co.*, No. 5:02–cv–367, 2002 WL 31833646, at *6 (N.D. Ohio June 17, 2002) (quoting *Picker Int'l*, 35 F. Supp. 2d at 573). After weighing the relevant private and public factors, the court must then "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 62-63 (quoting 28 U.S.C. § 1404(a)).

### b. Analysis

First, the Court notes that neither party disputes that the threshold requirement under § 1404(a) is met: this case could have been brought in the Southern District, instead of the Northern District, of Ohio. *See Picker Int'l*, 35 F. Supp. 2d at 572.

Next, the Court balances several private and public interest factors to determine whether transfer is appropriate here. These factors include the convenience of the parties, the convenience of the witnesses, the location of operative facts, the ability to compel unwilling witnesses, the interests of justice, ease of access to sources of proof, and the plaintiff's choice of forum. *See Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016).

Several private interest factors—convenience of the parties, convenience of the witnesses, the ability to compel unwilling witnesses, and ease of access to sources of proof—do not tilt in favor of either party. First, the convenience of the parties is neutral. Jones, as a North Carolina resident, will have to travel to Ohio, regardless of venue. Both Defendants' principal places of business are in Cincinnati, but travel between Cincinnati and Cleveland is not particularly onerous. *See, e.g., Airgas USA, LLC v. Pro2 Respiratory Servs., LLC*, 1:16–CV–00491, 2016 WL 4408788, at *2 (N.D. Ohio Aug. 19, 2016) (denying motion to transfer from Northern District of Ohio to Southern District of Ohio, noting the burden on witnesses to travel from the Southern to Northern District was "minimal").

Second, the convenience of the witnesses does not weigh towards one party or the other. Most witnesses will be within Defendants' control, and, therefore, Defendants "will be able to compel their presence in either forum." *Id.* Third, should either party wish to call Flynn as a non-party witness, he is neither a resident of the Northern nor Southern Districts of Ohio, and therefore beyond either District's subpoena power. Fourth, the ease of access to sources of proof does not tilt towards either side, thanks to the ubiquity and ease of electronic document review and transfer. *See, e.g., North Am. Demolition Co. v. FMC Corp.*, No. 5:05–cv–0104, 2005 WL 1126747, at *3 (N.D. Ohio Apr. 28, 2005).

One private interest factor, choice of forum, weighs slightly in Jones's favor. However, this factor does not weigh substantially in her favor because Jones is not a resident of the Northern District of Ohio. Therefore, she does not receive the "substantial" deference enjoyed by plaintiffs who bring actions in their home districts. *Cescato*, 2005 WL 3487974, at *2.

However, public interest factors—the location of operative facts and the interests of justice— weigh in Defendants' favor. Interests of justice include "concern for judicial economy, the Court's familiarity with the governing law, the interest in resolving controversies locally, and the relative congestion of the courts." *Bradburn v. Wal-Mart Stores*, No. 1:12–cv–01095, 2012 WL 3138373, at *2 (N.D. Ohio Aug. 1, 2012). Concern for judicial economy, familiarity with relevant state law, and docket congestion[3] do not tilt in favor of either party. However, this dispute arose from Defendants' alleged conduct in the Southern District. (Doc. No. 1 at ¶¶ 38-66.) All of the operative facts occurred within either the Southern District of Ohio, the Western District of North Carolina, and/or the District

---

[3] Defendants note that the Northern District of Ohio's docket appears to have at least 1000 more cases than the Southern District's docket. (Doc. No. 9-1 at PageID# 59.) As Jones points out, however, many of these cases relate to the ongoing multidistrict opioid litigation. These cases do not impact docket congestion for the purposes of this transfer analysis.

7

of South Carolina; there is no connection at all between the Northern District of Ohio and the alleged conduct in this action. *See North Am. Demolition Co.*, 2005 WL 1126747, at *3. This Court has previously indicated a preference for "resolving controversies in their locale." *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8 F. Supp. 2d 1008, 1011 (N.D. Ohio 1998). Justice is better served if the Southern District, the locale where this case "finds its center of gravity," adjudicates the matter. *North Am. Demolition Co.*, 2005 WL 1126747, at *3 (internal quotations omitted).

Because Jones is not a resident of the Northern District of Ohio, her choice of forum is afforded the same weight as the other factors. *See Central States*, 8 F. Supp. 2d at 1011. Accordingly, weighing all factors together, the Court finds that they weigh in favor of transferring this action to the Southern District of Ohio. *See, e.g., Hamilton County Ohio v. Hotels.com, L.P.*, No. 1:10–cv–668, 2011 WL 14369, at *3 (S.D. Ohio Jan. 3, 2011) (determining that while "the convenience factor does not tip the balance in favor of a transfer," transferring the matter from the plaintiffs' chosen forum of the Southern District of Ohio to the Northern District of Ohio was appropriate based solely on the "interest of justice"); *see also Bradburn*, 2012 WL 3138373, at *2 (transferring matter from Northern District of Ohio, where the plaintiff resided, to the Southern District of Ohio because the "interest in resolving controversies locally does favor transfer to the Southern District"); *North Am. Demolition Co.*, 2005 WL 1126747, at *3 (transferring matter to the Western District of New York, the locale in which the operative facts "wholly" occurred).

### III. Motion to Dismiss

Because the Court has determined that the Southern District of Ohio is the more appropriate venue, it declines to consider the merits of Defendants' Motion to Dismiss under Rule 12(b)(6).

8

### IV. Conclusion

For all of the foregoing reasons, Defendants' Motion to Transfer Venue is GRANTED. The Court ORDERS this case transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Southern District of Ohio, and declines to consider the merits of Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Date: August 19, 2020

       *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE